IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CRESCENT BANK & TRUST** : **CIVIL ACTION**
:
**v.** :
:
**CHESTER PIKE AUTO SALES, INC.** : No. 15-4131

**MEMORANDUM AND ORDER**

**Ditter, J.** November 30, 2017

Crescent Bank & Trust is a Louisiana bank and Chester Pike Auto Sales is a Pennsylvania automobile sales agency that buys and sells used cars. The parties agreed by written contract that Crescent could purchase installment payment contracts originated by Chester from vehicle sales. Crescent now brings this suit seeking damages for breach of contract and other relief. Because there are factual issues and a failure to prosecute, I will refuse Crescent's motion for summary judgment.

**I. SUMMARY JUDGMENT**

First, the familiar standards for summary judgment: summary judgment is appropriate if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law. FED.R. CIV. P. 56(a). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter, but instead, determines whether or not a genuine issue of fact exists requiring a trial. The moving party bears the burden of establishing there are no genuine issues of material fact. In response, a non-moving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings. Instead, it is required that there must be evidence on

which a jury could reasonably find for the non-movant. Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.

## II. CRESCENT'S CLAIMS

On February 13, 2013, the parties entered into a ten-page, Non-Recourse Dealer Agreement pursuant to the terms of which Crescent could purchase installment payment contracts originated by Chester from the credit sales of automobiles. If Crescent purchased a contract, the automobile being sold would act as collateral with a first lien in favor of Crescent shown on the purchaser's title.

In Count One of an amended complaint, Crescent alleges that Chester breached the agreement in two ways: first by failing to pay fees and taxes for licencing and titling due to the Pennsylvania Department of Transportation (PennDot) when a car was sold, and second by misrepresenting the value of cars Chester sold that were then financed by Crescent. Crescent asserts that as a result of Chester's alleged failure to pay taxes and fees, Chester is obligated to repurchase "several" customer contracts and 39 more for Chester's alleged misrepresentations of vehicle values.[1] In its second cause of action, Crescent asks that Chester's alleged repurchase obligations be enforced by a decree of specific performance. In its third cause of action, Crescent claims Chester fraudulently misrepresented the down payments for vehicles that purchasers provided to Chester. Finally, in its fourth cause of action, Crescent asserts it is entitled to a pro rata share of cancelled insurance policy and extended warranty policy refunds for vehicles it had repossessed.

---

[1] Crescent asserts that there were 51 contracts where vehicle value was misrepresented but 12 of them were covered by the non-payment claim and so its misrepresentation claim is only for 39 contracts.

Turning to Count One of the amended complaint and the first of Crescent's claims.

As to each contract sold to Crescent, Chester represented and warranted that all fees that were payable to public officials with respect to licensing, titling, and registering the vehicle had been paid in full, and that all sales and excise taxes had also been paid in full. In addition, Chester represented and warranted that there would be delivered to Crescent the title to the vehicle that would show Crescent's first priority security interest. To pay the necessary fees, Chester obtained checks in the proper amounts from the vehicle's purchaser and had them and the other paper work mailed to PennDot. In each of the 147 contracts that Crescent bought from Chester, these checks were accepted by PennDot which then issued a title showing Crescent as having the first lien on the vehicle. Not satisfied with several of the vehicle-purchaser's payments to it, Crescent stopped its financing arrangements with Chester after about nineteen months, in September of 2014. From an audit several months later, Crescent learned that as to 33 of its purchased contracts, the purchaser's check had bounced when PennDot deposited it. The dates of those deposits are not a part of the record.

As a result of the fact that the purchaser's check had bounced, Crescent now maintains that fees and taxes had not been paid as represented and warranted by Chester. Under the terms of its contract, Chester agreed that if any representation or warranty prove to be misleading, false, or incorrect in any material respect, Crescent had the right to insist that Chester repurchase the contract.

In his declaration, Chester's finance manager, William Wilmot, stated that if PennDot had not accepted the purchaser's check as payment of sales tax and registration fees, it would not have re-issued the new title and entered the bank as a lienholder.

Crescent does not dispute the fact that in each instance, PennDot issued a new title to the vehicle that showed Crescent as the first lien holder and that none of its rights to enforce payment were impaired.

Following the procedure required by the contract, on February 12, 2015, and again on April 1, 2015, and April 24, 2015, Crescent "insisted" that Chester repurchase the contracts where payment-checks had bounced. When Chester failed to do so, Crescent brought the present action for damages of $370,000. In summary then, despite PennDot's issuance of a new title showing Crescent's lien, Crescent asks me to infer that fees and taxes had not been paid. Chester asks me to infer that fees and taxes had been paid because PennDot issued a new title showing Crescent's lien. These differing inferences create a factual issue and therefore summary judgment on the first claim asserted in Count One of Crescent's amended complaint will be refused.

Turning to Crescent's second claim in Count One. There are two sources of information about vehicle-value that Crescent uses: AccuBook which describes a vehicle's features and options as created and installed by its manufacturer, and DealerTrack which shows a vehicle's present features and options as noted by the vehicle's seller, here Chester. Crescent obtained a print out for 51 vehicles it had financed and found that there were options and features reported by Chester that were not present when those vehicles left the factory. From this difference, Crescent argues that Chester misrepresented the value of these vehicles that it had accepted as collateral. The parties' contract provides that Chester would furnish to Crescent a full description of the vehicles Crescent was financing and that Chester represented and warranted it had done so. Crescent again turns to the provision in the contract that if any representation or warranty proved to be misleading, false, or incorrect in any material respect, Crescent had the

right to insist that Chester repurchase the contract. In support of its first claim in Count One, Crescent alleged that it had demanded Chester repurchase in letters dated February 12, 2015, April 1, 2015, and April 24, 2015. As to the present misrepresentation-claim however, Crescent did not make a similar demand and just brought a claim for damages of $300,230.40 as the second part of Count One of its amended complaint. There is nothing in the parties' contract that gives Crescent the right to enforce it by a suit for damages. It was for that reason - the alleged failure to pay fees and taxes - that Crescent made demands for repurchase. When Chester failed to do so, Crescent brought its breach of contract claim, the first part of Count One.

However, with regard to its misrepresentation claim, Crescent failed to make a demand to repurchase and simply brought this suit for damages.[2] In view of Crescent's failure to follow the requirements of its own contract, summary judgment on the second claim in Count One must be refused.

There is another reason that might be considered for refusing summary judgment – the paucity of misrepresentation-evidence that Crescent offered.

In his declaration, Michael Nicoloff, Crescent's vice president and chief risk officer, provided two examples that he said showed vehicle-misrepresentation. The first involved a 2008 Nissan. AccuBook showed its various features and options when it left the factory in 2008. A Dealer Track print out for this second hand car, which had passed through one or more owners, showed that five or six years later Chester claimed it had features and options that were not present when this 2008 Nissan rolled off the assembly line. Crescent does not claim that anyone

---

[2]In general, a party can bring a claim for damages at any time. Here, on a motion for summary judgment, Crescent is bound by contract requirements.

on its behalf inspected the car and found that the options and features claimed by Chester were not there.

Mr. Nicoloff's second example involved a 2007 Cadillac's features and equipment that AccuBook described from information provided by the factory. Six or seven years later according to Dealer Track, Chester reported additional options and features when it sold this used car. Again, Crescent does not rely on a physical inspection to prove the absence of the features and options described by Chester, but relies only on the difference in the car when it came from the factory and as described by Chester years later.

In summary, Crescent asks me to infer that two used cars sold by Chester were actually in the same condition as when they left the factory a half dozen years before. And the same was true with 49 other previously owned cars sold by Chester. I recognize that at this stage of a summary judgment consideration not much in the way of proof is required of a movant. Nonetheless, the claim must be plausible and here it is not. Common sense, the success of various automobile accessory stores, variations in taste and use, as well as vehicle pride all force the conclusion that a car in a half dozen years of prior ownership may well have been the beneficiary of new features and options.

Crescent's failure to move the needle off zero might well be an additional reason to deny summary judgment.

Of course, I am not suggesting that at trial Crescent could not show evidence of misrepresentation – physical inspections of the vehicles in question, any descriptions that may have been made of the vehicles when Chester bought them, declarations from owners, or

anything else that would show the absence of a vehicle's features and options claimed by Chester when Chester sold it.

Count Two of Crescent's amended complaint asks for a decree of specific performance and Count Three alleges fraud on the part of Chester. Crescent's brief in support of its motion for summary judgment makes no mention of Counts Two and Three. I will refuse summary judgment on these two counts for lack of prosecution.

In Count Four of its amended complaint, Crescent seeks a pro rata share of Gap policy and extended warranty premiums on 22 vehicles it had repossessed and sold. A Gap policy reimburses a purchaser if the vehicle is repossessed and the amount realized from a subsequent sale is not enough to pay off the purchaser's contract obligations. An extended warranty contract provides for payment to a purchaser for the repair of certain vehicle components that go bad during the period of time covered by the warranty. While Chester admits that Crescent is entitled to share in premium refunds, it does not agree in the manner that Crescent determines what that amount should be. Again there is a disputed issue of fact and summary judgment must be refused.

One final thing: in its objections to Crescent's motion for summary judgment, Chester asks that judgment be entered against Crescent on its non-payment and misrepresentation claims. I refuse to do so in the absence of a formal motion which shall not be entered until after I discuss the matter with counsel.

An appropriate order follows.