# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CRESCENT BANK AUTO SALES, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHESTER PIKE AUTO SALES, INC. | : | No. 15-4131 |

## MEMORANDUM

**DITTER, J.**                                                          **January 26, 2018**

Crescent Bank & Trust is a Louisiana bank and Chester Pike Auto Sales is a Pennsylvania automobile sales agency that buys and sells used cars.   The parties agreed by written contract that Crescent could purchase installment payment contracts originated by Chester from vehicle sales.   Crescent now moves that I reconsider my refusal to grant its motion for summary judgment and grant it.   For the reasons that follow I will refuse to do so.

## I.  MOTION FOR RECONSIDERATION

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence.  U.S. ex. rel. Schumann v. Astrazeneca Pharma. L.P., 769 F.3d 837, 848 (3d Cir. 2014).   A judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in controlling law;  (2) the availability of new evidence that was not available when the court decided the motion for summary judgment; or (3) the need to correct a clear error of law or to prevent manifest injustice.  Id. at 849.  However, a

motion for reconsideration should not be used to present theories or arguments that could have been advanced before.  Id.

## II.  BACKGROUND

On February 13, 2013, the parties entered into a fifteen-page, Non-Recourse Dealer Agreement pursuant to the terms of which Crescent could purchase installment payment contracts originated by Chester from its credit sales of automobiles.  If Crescent purchased a contract, the automobile being sold would act as collateral with a first lien in favor of Crescent shown on the purchaser's title.

In Count One of an amended complaint, Crescent alleges that Chester breached the agreement in two ways: first by failing to pays fees and taxes for licencing and titling due to the Pennsylvania Department of Transportation (PennDot) when a car was sold, and second by misrepresenting the value of cars Chester sold that were then financed by Crescent.  Crescent asserts that as a result of Chester's failure to pay taxes and fees, Chester is obligated to repurchase "several" customer contracts and 39 more for Chester's misrepresentations of vehicle values.

In its second cause of action, Crescent asks that Chester's alleged repurchase obligations be enforced by a decree of specific performance, while in the third, Crescent alleges fraud.

Finally, in its fourth cause of action, Crescent asserts it is entitled to a pro rata share of Gap and extended warranty policy refunds for vehicles it had repossessed.

## III.  CRESCENT'S RECONSIDERATION CONTENTIONS

Crescent contends that I should reconsider my refusal to grant summary judgment

because I erred when I found that there was a factual question as to whether taxes and fees were paid, and second, that I failed to realize that whether Chester complied with its contractual obligation or not is a legal not a factual issue.

A further review of the facts is necessary. From mid-February, 2013, when the parties entered into their agreement, until the end of September, 2014, Crescent bought 147 vehicle-purchase loan contracts from Chester. In each instance, Chester offered the contract to Crescent and Crescent decided to buy it. Chester then sent the contract to Crescent. The necessary paper work, and the purchaser's checks to cover fees and taxes, were sent to PennDot. Satisfied with the paper work and payment checks it had received, PennDot issued a new title for the vehicle showing that Crescent was the first lien holder. Crescent was aware of the way Chester processed the paper work and did not object to it. Crescent was also aware that PennDot accepted the purchaser's checks as payment of fees and taxes.[1] It was not until four and a half months after the parties' last transaction - two years after their first - that Crescent raised any question about how and when fees and taxes were paid. At that time, Crescent found that as to the transactions it asserts were contract breaches, the checks sent to PennDot lacked sufficient funds to cover them when presented for payment. In short, the checks bounced and therefore, Crescent asserts, fees and taxes had not been paid.

Crescent contends that the contract is clear, for it states in pertinent part:

**IV. DEALER'S REPRESENTATIONS AND WARRANTIES.**
Dealer makes the following representations and warranties to

---

[1]Declaration of William Wilmot, paras. 5,6, and 12.

Crescent at the time this Agreement is executed and at the time each Contract is purchased by Crescent.

> ### G. Representations and Warranties with Respect to Each Credit Sale and the Vehicle
>
> > (8) All fees that are payable to public officials with respect to licensing, titling and registering the Vehicle have been paid in full.
> >
> > (9) All sales, excise and other taxes applicable to the sale of the Vehicle have been paid in full.

Again, since the checks bounced, payment was not made, and therefore Chester breached the contracts in question and is obligated to repurchase them as provided by section VIII of the contract:

> **VIII. DEALER'S REPURCHASE OBLIGATIONS.** Dealer agrees to repurchase each Contract that is affected or that may be affected by Dealer's failure to perform its obligations under this Agreement, or by a breach of any of Dealer's representations and warranties as provided herein.

Crescent contends not only is the contract clear, but the breach is clear, the requirement to repurchase equally clear, and since the interpretation of a contract is for the court, I should so find. However, if a court determines as a matter of law that a contract is ambiguous, then extrinsic evidence may be used to determine the true intent of the parties, and determining the intent of the parties becomes a question a fact. Carter v. BRMAP, 591 So.2d 1184, 1188 (1st Cir 1991). In this posture, the grant of summary judgment is appropriate only if there is no genuine issue of material fact. Id.

As I pointed out, and Crescent insists, Section IV G provides that at the time a contract is purchased, Chester represents that all fees and taxes have been paid in full. However, Section IV G does not stand alone. Section II E provides:

> **II. E. Completion and Execution of Contracts.** If Crescent agrees in writing to purchase a Contract from Dealer, Dealer shall complete the relevant potions of the Contract. Dealer shall then require the Customer to execute the completed Contract, which Dealer shall then immediately forward to Crescent.

In short, Section II E has no requirement that taxes and fees have been paid at the time Crescent purchases a contract while Section IV G provides that at the time Crescent purchases a contract, fees and taxes have already been paid in full. It follows that the contract is ambiguous with respect to the payment of fees and taxes and therefore not a subject for summary judgment.

There is more.

> **IV. K. Remedies Available to Crescent**. Should Dealer fail to comply with any of its obligations under this Agreement, or should any representation or warranty made hereunder, or under any other agreement with Crescent, prove to be misleading, false, or incorrect in any **material** respect, Crescent shall have the right to insist that Dealer immediately repurchase each affected Contract as provided herein. (My emphasis)

Thus, while Section VIII is absolute, Section IV K requires Chester to repurchase only if the breach is material. The contract is ambiguous for this second reason.

The contract was modified by what Chester did in selling and what Crescent did in buying. They did not follow the procedure specified in Section IV G of the contract, i.e., Chester did not represent that fees and taxes had been paid when the contract was purchased but rather showed they were being paid after the purchase when the completed contract was sent to Crescent and the necessary paperwork was sent to PennDot. As I point out, Crescent accepted without a murmur how Chester was processing matters and

over the course of 19 months paid thousands of dollars for 147 contracts. And it continued for an additional four and a half months after the parties had stopped doing business. Or putting it an other way, for 19 months Crescent put its money where its mouth wasn't.

In summary, the contract was made ambiguous by different terms on the same subject and was modified by the parties' selling and buying.

Summary judgment on the first cause of action in Count One of Crescent's amended complaint was properly denied.

Turning now to the second cause of action in Count One of the amended complaint that asserts the value of the vehicles provided as collateral to Crescent were misrepresented.

In my memo explaining why summary judgment was being denied I referred to the contract's provision, Section IV K, that if any representation by Chester proved to be incorrect, Crescent had the right to "insist" that Chester repurchase the contract. I then contrasted the differing ways Crescent had made its claims in the two causes of action in Count One. In its first cause, claiming that fees and taxes had not been paid, Crescent sent three letters to Chester insisting that Chester repurchase the contracts in question and then brought suit for breach of contract. However, as to the second cause claiming vehicle misrepresentation, Crescent had not bothered to first "insist" that Chester repurchase. Instead, Crescent just brought suit for damages. In a footnote, I pointed out that in general a party can bring a claim for damages at any time, but here on a motion for summary judgment, Crescent is bound by the contract's requirements. I went on to hold,

"In view of Crescent's failure to follow the requirements of its own contract, summary

judgment on the second claim in Count One must be refused."

In its brief supporting its motion for reconsideration, Crescent asserts that it would

have been futile to comply with the requirement of its contract and therefore need not be

considered. However, I note that Crescent's self-determined futility now revealed for the

first time and based on events a year earlier in another instance, is hardly reason to ignore

Crescent's contract requirement.[2] We are here concerned with the right to summary

judgment, a contract, and the fact that there is nothing in that contract which gives

Crescent the right to enforce it by a suit for damages.

Having clearly said I was refusing summary judgment for Crescent's failure to

follow the contract's requirement, I then said there was another reason that **might** be

considered for refusing summary judgment. Not that it was my reason but a reason that

**might** be considered. Since what followed was not my reason, there is no need to go over

the alleged faults in my subsequent discussion or what Chester calls Crescent's "sleight-

of-tongue and down right misrepresentation." In addition, there is no need to discuss

Crescent's assertions in Counts Two, Three, and Four as they were not mentioned in the

---

[2]Crescent cites two cases in support of its contention that there was no need to adhere to its contract and follow its requirements because it would have been futile to do so. Neither case is persuasive. Neither involve summary judgment and in both the facts were in dispute. Poche v. Ruiz, 119 So.2d. 469 (1960), involved a contract for the sale of real estate. Under Louisiana law, before suit may be brought the plaintiff must put the defendant in default and that was not done in either case. In Poche, the Supreme Court of Louisiana held it would be futile for the plaintiff to do so since both parties knew performance was impossible.

In Centanni v. A.K. Roy, Inc., 258 So.2d 219 (1972), the court held there is no necessity to formally put one in default when he refuses to perform or acknowledges an inability to perform. Here, Chester had no knowledge of Crescent's claim prior to suit and therefore could not have refused to perform.

brief supporting the motion for reconsideration.

In summary, the contract is ambiguous and was modified. It follows there are factual questions and summary judgment was properly refused.

An appropriate order follows.